# In the United States Court of Federal Claims

**No. 13-118T**
**Filed: May 5, 2015**

```
* * * * * * * * * * * * * * *    *
JOHN M. MARTTI,                  *
                                 *
              Plaintiff,         *        Federal Tax;  Motion to
         v.                      *        Dismiss; Lack of Subject
                                 *        Matter Jurisdiction; Claim for
UNITED STATES,                   *        Refund;  Waiver;  Foreign
                                 *        Earned Income Exclusion.
              Defendant.         *
                                 *
* * * * * * * * * * * * * * *    *
```

**Molly L. Stanga**, Mayhall Law Firm, APLC, Covington, Louisiana, for plaintiff.

**S. Starling Marshall**, Trial Attorney, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With her were **G. Robson Stewart**, Assistant Chief, Court of Federal Claims Section, **David I. Pincus**, Chief, Court of Federal Claims Section, and **Caroline D. Ciraolo**, Acting Assistant Attorney General, Tax Division.

**O P I N I O N**

<u>**HORN, J.**</u>

**FINDINGS OF FACT**

Plaintiff John M. Martti filed a complaint in the United States Court of Federal Claims, which alleges that the Internal Revenue Service (IRS) owes him refunds of tax, penalties, and interest totaling $15,740.61 for the 2005 tax year, and $27,788.60 for the 2006 tax year. Plaintiff argues that he is owed these amounts because the IRS improperly concluded that he did not qualify for the foreign earned income exclusion under 26 U.S.C. § 911(a) (2012). Plaintiff filed his complaint on February 14, 2013. The parties subsequently indicated that after the exchanges of information and negotiation between the parties, they believe that $22,844.56 of plaintiff's 2006 deficiency can be resolved through settlement.

Plaintiff is a United States citizen who worked as a sea vessel captain in Nigeria's territorial waters. He, therefore, claimed Nigeria as his principal place of business and his

tax home for the 2005 and 2006 tax years. Alternatively, plaintiff asserts in his complaint that his tax home for 2005 and 2006 was Costa Rica, because plaintiff claims he has resided in Costa Rica since 2005, that he spent at least 330 days in 2015 outside of the United States in foreign countries, including Costa Rica and Nigeria, and that he "was a bona fide resident of Costa Rica during the 2006 tax year." Plaintiff states that his job as a sea vessel captain provided his only source of income, and that he only was licensed to navigate Nigerian territorial waters, not international waters. Plaintiff argues that given his foreign residency and the foreign source of his income, he is eligible for the foreign earned income exclusion set out in 26 U.S.C. § 911(a) for both the 2005 and 2006 tax years.

Plaintiff filed his Form 1040 U.S. Individual Income Tax Return for the 2005 tax year on April 27, 2006, claiming that all of his earned income was excluded from taxation under the foreign earned income exclusion. Plaintiff's employer, Galliano Marine Services International, had withheld $10,722.00 of plaintiff's earnings in 2005 as income tax the employer paid to the IRS in plaintiff's name. See 26 U.S.C. § 6513(b)(1) (2012). On May 22, 2006, the IRS refunded the $10,722.00 withheld salary to plaintiff.

Plaintiff filed his Form 1040 U.S. Individual Income Tax Return for the 2006 tax year on May 3, 2007. Plaintiff's employer had withheld $21,810.00 of plaintiff's wages as income tax the employer paid to the IRS in plaintiff's name. See 26 U.S.C. § 6513(b)(1). Plaintiff claimed that $82,400.00 of his earned income, the maximum allowed under the foreign earned income exclusion, should have been excluded in calculating his tax liability, and identified $19,264.00 of the $21,810.00 withheld by his employer as an overpayment of tax to be refunded to plaintiff.[1] On May 28, 2007, the IRS refunded $19,264.00 to plaintiff.

On November 15, 2007, Michael Pryzbyl, in his capacity as a tax compliance officer for the IRS, sent plaintiff a letter informing him that the IRS had audited plaintiff for the 2005 and 2006 tax years and assessed additional tax liability. The IRS concluded that plaintiff did not meet the requirements for the foreign earned income exclusion because income earned while working in international waters does not qualify as income earned in a foreign country, but rather, "is U.S. source income." The IRS found, therefore, that a deficiency existed in the amount of $10,071.00 for the 2005 tax year, and $17,411.00 for the 2006 tax year, and that these underpayments warranted additional tax, interest, and penalties. With his November 15, 2007 letter, Mr. Pryzbyl included two copies of the IRS examination report, which contained proposed changes to plaintiff's tax liability for 2005 and 2006. He requested that plaintiff review the IRS examination report and then inform the IRS whether or not he agreed with the proposed changes to his federal income tax liability for the 2005 and 2006 tax years. The letter indicated that plaintiff should respond no later than December 15, 2007, otherwise, the IRS would issue a notice of deficiency.

---

[1] Plaintiff's 2006 wages exceeded the maximum foreign earned income exclusion allowed under 26 U.S.C. § 911(b). Therefore, plaintiff was required to pay United States income tax on the excess portion of his income and only $19,264.00 of the $21,810.00 withheld was alleged as an overpayment. See 26 U.S.C. § 911(b).

In a second letter to plaintiff, dated January 9, 2008, Mr. Pryzbyl, this time identified as a group manager, indicated that plaintiff had not replied to the November 15, 2007 letter, and January 24, 2008 would be the last day for plaintiff to respond prior to the IRS issuing a notice of deficiency.

According to Mr. Pryzbyl's "Examining Officer's Activity Record," he closed the case on January 31, 2008 after receiving no response from the taxpayer. Mr. Pryzbyl's activity record shows he subsequently received a phone call from plaintiff, on February 11, 2008,[2] in which the taxpayer "STATED HE WORKED IN NIGERIA ENTIRE YEAR." (capitalization in original). Mr. Pryzbyl granted plaintiff a requested extension to respond to the IRS' proposed changes, and requested a letter from plaintiff's employer stating that he worked in Nigeria for the entire year. The activity record indicates that, once again, no response was received from plaintiff,[3] and, on April 3, 2008, after the March 15, 2008 extension deadline had passed, the case, once again, was closed by the IRS.

The IRS issued a notice of deficiency on August 1, 2008 in the amount of $10,071.00 for the 2005 tax year and $17,411.00 for the 2006 tax year. The IRS also assessed a twenty percent penalty, amounting to $2,014.20 for the 2005 tax year and $3,482.20 for the 2006 tax year. See 26 U.S.C. § 6662(a) (2012). The notice of deficiency stated that interest on the deficiencies would continue to accrue from the due date of the tax returns until they were paid. The notice informed plaintiff that if he wished to contest the determination before paying the tax, he could file a petition in the United States Tax Court within 150 days of the date listed on the notice. The notice also instructed plaintiff that he could contact Davina Manuel, an IRS tax compliance officer, if he had any questions.

---

[2] Plaintiff's response brief indicates a different date, February 22, 2008, for when he contacted Mr. Przybyl to discuss "his employment in Nigerian territorial waters." The discrepancy does not affect the court's analysis or conclusions.

[3] Although not included in the "Examining Officer's Activity Record," plaintiff claims in his response brief to defendant's motion to dismiss:

> [p]ursuant to that conversation, upon information and belief, the plaintiff or James Brohl, the plaintiff's certified public accountant who was the plaintiff's authorized representative at the time ('plaintiff's CPA') submitted to the IRS a letter from the plaintiff's employer stating that the plaintiff had been working in Nigerian territorial waters as a Captain of an oilfield supply vessel since 2005.

Plaintiff states that the letter that was sent to the IRS is attached to his response brief as Exhibit 8. It is not clear to the court, however, that Exhibit 8 is the letter plaintiff sent in response to the February 2008 conversation. Exhibit 8 is a letter from Mr. Brohl to the IRS, dated August 10, 2009, approximately 18 months after the phone conversation to which plaintiff alleges the letter responded.

According to plaintiff, following the issuance of the statutory notice of deficiency on August 1, 2008, plaintiff's accountant, Mr. Brohl, contacted Ms. Manuel to discuss what plaintiff describes as his "response to the January 9, 2008 letter" sent to plaintiff by the IRS.[4] On September 11, 2008, Ms. Manuel's office appears to have faxed a Form 4564 Information Document Request regarding both tax years to plaintiff's accountant for completion,[5] along with a Form 9209 Bona Fide Residence/Physical Presence Questionnaire, a Form 9211 Foreign Earned Income Exclusion Questionnaire, and a Form 9212 Income Questionnaire. Plaintiff claims he completed and returned the forms to the IRS on October 8, 2008.

On June 26, 2009, the IRS sent plaintiff a letter to an address in Cost Rica regarding the 2005 and 2006 tax audits. This letter indicated that the IRS was not altering the tax increase proposed in the August 1, 2008 statutory notice of deficiency.[6] The letter stated:

> We have carefully considered the information you recently provided us about your federal tax liability for the year(s) shown above [2005 and 2006] . . . . We did not make any changes to the tax increase we previously proposed in the statutory notice of deficiency issued on the date shown above. The information you provided did not justify a change . . . .

The letter indicated that if plaintiff agreed with the findings, he should sign and return an agreement form, and if plaintiff did not agree with the IRS' conclusion, he could file a

---

[4] Again citing what plaintiff calls Exhibit 8, Mr. Brohl's August 10, 2009 letter to the IRS, plaintiff claims in another place within his response to defendant's motion to dismiss that he provided the IRS with evidence that he worked in Nigerian territorial waters. It is not clear if plaintiff is claiming Exhibit 8 was his response to the IRS' January 9, 2008 letter, submitted as his evidence of working in Nigeria, or both, given that Exhibit 8 is a letter that was sent approximately one year after the notice of deficiency was issued, and, in the portion of plaintiff's brief that cites to Exhibit 8, plaintiff appears to be discussing communication before the notice of deficiency was issued.

[5] The Form 4564 states: "Please note that the Last Date to Petition Tax Court remains October 30, 2008," indicating that plaintiff's correspondence with the IRS had not effected an extension of his deadline for petitioning the Tax Court. The notice of deficiency, however, stated that because the letter was addressed to plaintiff outside of the United States, he would be allowed 150 days, rather than the 90 days originally calculated, within which to petition the Tax Court, and identified December 29, 2008 as the applicable filing deadline. As defendant now acknowledges, the October 30, 2008 deadline the IRS provided to plaintiff on Form 4564 was incorrect.

[6] The IRS' June 26, 2009 letter mistakenly cites the notice of deficiency as having been issued on August 8, 2008, rather than August 1, 2008, its actual issuance date.

petition in the United States Tax Court within 150 days of the date of the notice of deficiency.

Plaintiff states that Mr. Brohl attempted to call Ms. Manuel three times in the subsequent weeks, but that her voicemail box was full each time. After repeated unsuccessful attempts to reach Ms. Manuel, plaintiff claims that on August 5, 2009, his accountant spoke with Jeannie Thomas, Ms. Manuel's manager at the IRS. Plaintiff states in his response brief that during Mr. Brohl's call with Ms. Thomas, Mr. Brohl:

> learned of the various reasons that Mr. Przybyl and the IRS did not consider the plaintiff to be a bona fide resident of a foreign country, and, therefore, had denied the plaintiff's use of the foreign earned income tax exclusion, which resulted in the issuance of the June 26, 2009, [sic] letter.

On August 10, 2009, Mr. Brohl sent a letter to the IRS on plaintiff's behalf requesting "audit reconsideration" for the 2005 and 2006 audits, based on "additional information not submitted with the original return or requested by previous IRS inquiries." The letter claimed that plaintiff had responded timely to all IRS inquiries and that the IRS had disallowed plaintiff's foreign income exclusion based on an understanding that plaintiff performed his duties in international waters. Plaintiff's representative explained in the letter that plaintiff did not work in international waters. Rather, he worked in Nigerian national waters on an oilfield rig supply ship, ferrying equipment and passengers from a Nigerian port to drill sites located in Nigerian national waters. Plaintiff's accountant also reiterated that plaintiff moved to Costa Rica in 2005, and he applied for permanent residency that year. Moreover, plaintiff informed the IRS that, as of February 2005, his address was a Costa Rica location, and he declared his intention to remain in Costa Rica indefinitely. The accountant also noted that although plaintiff owns rental properties in Florida and retains a Florida driver's license, the Florida property is not his personal residence.

Plaintiff filed a Form 1040X Amended U.S. Individual Income Tax Returns for each of the 2005 and 2006 tax years. Plaintiff's tax preparer signed the forms on August 14, 2009, plaintiff signed the forms on August 19, 2009, and the IRS stamped the forms as received on September 23, 2009.[7] In the section titled "Explanation of Changes" on the Form 1040X for each year, 2005 and 2006, the taxpayer indicated: "AUDIT RECONSIDERATION REQUESTED PRESENTING ADDITIONAL SUPPORT DOCUMENTATION, SEE LETTERS AND EXHIBITS SENT WITH THIS RETURN."

---

[7] Plaintiff, however, states in his complaint that "[u]pon information and belief, on or around August 9, 2009 Plaintiff timely filed a Claim for Refund" for each of the 2005 and 2006 tax years. Plaintiff asserts he filed such claims by filing Forms 1040X for each year. The August 9, 2009 date appears to be incorrect because the Forms 1040X were signed by plaintiff's tax preparer, Mr. Brohl, on August 14, 2009 and by plaintiff on August 19, 2009. Plaintiff revises his alleged timeline in his response brief, in which he states that he filed Forms 1040X on August 18, 2009 and the IRS stamped the forms as received on September 23, 2009.

(capitalization in original).  Plaintiff alleges that the submissions of these forms constituted his timely filing of a "Claim for Refund" for each of the 2005 and 2006 tax years. Plaintiff appears to have claimed the same overpayments and reported the same amounts on each Form 1040X as he had included on his original Forms 1040 for 2005 and 2006.

In a notification letter dated March 22, 2010, the IRS informed plaintiff that the IRS "applied $20,723.00 of the overpaid tax on your 2009 tax return to the unpaid balance of other federal taxes which our records show you owe." The IRS applied $15,740.61 of his overpayment from the 2009 tax year to his 2005 tax deficiency and $4,982.39 to his 2006 tax deficiency, thereby fully resolving his deficiency for the 2005 tax year and partially resolving his 2006 tax deficiency. Consequently, the remaining amount plaintiff owed for the 2006 tax year was $20,188.51, plus interest.

On February 17, 2011, in two separate letters, the IRS informed plaintiff that, after review, his requests for adjustments to his liability for the 2005 and 2006 tax years were denied. For the 2005 tax year claim, the IRS sent plaintiff IRS Letter 906, disallowing plaintiff's request for adjustment. The letter explained that income earned in ocean-based activity on international waters does not qualify for the foreign earned income exclusion. The letter stated: "The amended return filed 09/23/2009 has been considered. You have not substantiated the criteria needed to meet the Bona Fide Residence test, therefore you are not entitled to a Foreign Earned Income Exclusion." The letter also stated that if plaintiff wished to bring suit, he could file a petition in the United States District Court or the United States Court of Federal Claims within two years from the mailing of the letter.

Regarding the 2006 tax year claim, the IRS sent plaintiff IRS Letter 693, which indicated that the information plaintiff provided did not justify changing its prior determination. The letter stated that the Internal Revenue Code does not have a provision for filing income tax abatement claims, and that if plaintiff did not agree with the IRS' determination, he could file an amended return or claim for refund after paying the additional tax due. The letter concluded by explaining that if plaintiff files a claim or an amended return, he should do so within three years of the date he filed his original return or two years of the date the tax is paid, whichever is later.[8]

---

[8] Plaintiff alleges the IRS subsequently sent him a second letter regarding his 2006 claim via facsimile. Plaintiff provided with his response brief an exhibit that contains a facsimile cover letter and IRS Letter 906, addressed to Mr. Martti. The letter states that the IRS is disallowing his "claim for an adjustment to you [sic] tax." The fax cover sheet states it is from Glenda Rossberg at the IRS to Michael Mayhall, who may have been plaintiff's counsel at the time, given that his current attorney is with the Mayhall Law Firm. The fax cover sheet is dated July 26, 2012 and contains a subject line that reads "Mr. Martti and Letter 906." The IRS Letter 906, which plaintiff alleges accompanied the fax cover letter, is dated February 17, 2011, and no additional information regarding the timing of this letter or the events leading up to the IRS sending a second letter regarding the 2006 tax year have been provided to the court. The IRS Letter 906, which plaintiff contends was sent with the July 26, 2013 fax cover letter, contains the same information and language

According to the "CERTIFICATE OF OFFICIAL RECORD," (capitalization in original) on April 15, 2011, the IRS applied $7,275.00 from plaintiff's 2010 income tax overpayment to his 2006 tax deficiency, and on June 24, 2011, the IRS applied a $15,569.56 payment from plaintiff to satisfy the remaining amount of the 2006 tax year deficiency.

Plaintiff filed his complaint in the United States Court of Federal Claims on February 14, 2013, three days before the deadline the IRS had identified for filing a suit in this court. Defendant filed a motion to dismiss the case, alleging lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (2014) (RCFC). Defendant argues that this court lacks jurisdiction over plaintiff's claims because plaintiff did not file the proper administrative claims for refunds pursuant to 26 U.S.C. § 7422(a) (2012). Defendant argues that the Form 1040X Amended U.S. Individual Income Tax Returns upon which plaintiff relies were requests for abatement, rather than claims for refunds. Defendant notes that plaintiff's Forms 1040X stated they were being submitted for "audit reconsideration" rather than as refund claims, and the characterization of the forms as requesting audit reconsideration was consistent with an August 10, 2009 letter plaintiff's accountant, Mr. Brohl, sent to the IRS.[9] In his response brief, plaintiff argues that the IRS waived the requirement to file a formal claim for refund by adjudicating and disallowing plaintiff's Form 1040X requests for audit reconsideration as if they were proper claims for refund, despite plaintiff's notation on the forms that they were "Requests for Audit Reconsideration" and even though the underlying taxes had not been paid when the Forms 1040X were filed.

After filing the complaint in the United States Court of Federal Claims, plaintiff's counsel subsequently filed a timely refund claim with the IRS on April 15, 2013 for alleged overpayments totaling $22,845.00 for the 2006 tax year. The $22,845.00 for which plaintiff's counsel subsequently filed timely protective refund claims includes the amounts that were applied to plaintiff's 2006 tax deficiency on April 15, 2011 ($7,275.00) and June 24, 2011 ($15,569.56). With respect to these amounts, as of the date the above captioned lawsuit was filed, the statute of limitations for filing a timely claim for refund under 26 U.S.C. § 6511(a) (2012) had not passed. After settlement discussions, during which time the court stayed briefing of the case at the request of the parties, the parties indicated in a joint status report that they "believe they can resolve the $22,844.56 portion of the case by settlement." This opinion, therefore, only addresses the portion of plaintiff's claims regarding the $20,723.00 applied on March 22, 2010 to resolve plaintiff's 2005 tax year deficiency and a portion of his 2006 tax year deficiency.

---

as the February 17, 2011 letter the IRS previously had sent to plaintiff denying an adjustment to plaintiff's 2005 tax liability.

[9] The August 10, 2009 letter sent from Mr. Brohl to the IRS states that it "is a request for an audit reconsideration for years 2005 and 2006 . . . ."

**DISCUSSION**

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); see also Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."); Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy." Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 824 (2013); see also Arbaugh v. Y & H Corp., 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506–07)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise sua sponte, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006); see also Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 971 (Fed. Cir.) ("This court must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue."), reh'g and reh'g en banc denied, 614 F.3d 1330 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 909 (2011).

Pursuant to the RCFC and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2014); Fed. R. Civ. P. 8(a)(1), (2) (2015); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984), reh'g denied, 468 U.S. 1226 (1984); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003). If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); see also Land v. Dollar, 330 U.S. 731, 735 n. 4 (1947); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988); Catellus Dev. Corp. v. United States, 31 Fed. Cl. 399, 404–05 (1994).

The Tucker Act grants jurisdiction to this court as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S.

[392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

Regarding a tax refund suit, "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . until a claim for refund or credit has been duly filed with the Secretary [of the Treasury]." 26 U.S.C. § 7422.  In United States v. Clintwood Elkhorn Mining Co., the United States Supreme Court indicated that:

A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims. The Internal Revenue Code specifies that before doing so, the taxpayer must comply with the tax refund scheme established in the Code. That scheme provides that a claim for a refund must be filed with the Internal Revenue Service (IRS) before suit can be brought, and establishes strict timeframes for filing such a claim.

United States v. Clintwood Elkhorn Mining Co., 553 U.S. 1, 4 (2008) (citing 28 U.S.C. § 1346(a)(1))[10] and EC Term of Years Trust v. United States, 550 U.S. 429, 431, & n.2 (2007)). "[T]ax refund suits fall within the jurisdiction of the Court of Federal Claims, provided full payment of any assessment is first made by the claimant to the IRS." Manor Care, Inc. v. United States, 89 Fed. Cl. 618, 622 (2009) (citing 28 U.S.C. § 1346(a), Flora v. United States, 362 U.S. 145, 177, reh'g denied, 362 U.S. 972 (1960), and Shore v.

---

[10] The statute at 28 U.S.C. § 1346 provides that:

**(a)** The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

**(1)** Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]

28 U.S.C. § 1346(a)(1).

United States, 9 F.3d 1524, 1527 (Fed. Cir. 1993)), aff'd, 630 F.3d 1277 (Fed. Cir. 2011); see also Hall v. United States, 111 Fed. Cl. 766, 769 (2013) (citing 28 U.S.C. § 1346(a)(1) and Roberts v. United States, 242 F.3d 1065, 1067 (Fed. Cir. 2001)); Buser v. United States, 85 Fed. Cl. 248, 256 (2009) ("It is 'undisputed' that the Court of Federal Claims possesses the authority to adjudicate tax refund claims.") (internal citations omitted).

According to the United States Court of Appeals for the Federal Circuit, "in the context of tax refund suits, the [United States Supreme] Court has held that the Court of Federal Claims' Tucker Act jurisdiction is limited by the Internal Revenue Code, including 26 U.S.C. § 7422(a)."[11] RadioShack Corp. v. United States, 566 F.3d at 1360 (citing United States v. Clintwood Elkhorn Mining Co., 553 U.S. at 4 and United States v. A.S. Kreider Co., 313 U.S. 443, 447–48 (1941)); see also United States v. Dalm, 494 U.S. 596, 609–10, reh'g denied, 495 U.S. 941 (1990); Strategic Hous. Fin. Corp. v. United States, 608 F.3d 1317, 1324 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 131 S. Ct. 1513 (2011). Stated another way, "[i]n the context of tax refund suits, the United States sovereign immunity is construed narrowly and jurisdiction of the Court of Federal Claims is limited by the Internal Revenue Code, including 26 U.S.C. § 7422." Waltner v. United States, 679 F.3d 1329, 1332 (Fed. Cir.), cert. denied, 133 S. Ct. 319, reh'g denied, 133 S. Ct. 688 (2012); see id. at 1332 ("Thus, whether sovereign immunity has been waived and the Court of Federal Claims has jurisdiction over these refund claims depends on whether the taxpayers' submissions to the IRS constitute a claim for refund.").

The statute at 26 U.S.C. § 7422(a) functions as a waiver of the government's sovereign immunity in tax refund suits. See Chicago Milwaukee Corp. v. United States, 40 F.3d 373, 374 (Fed. Cir. 1994); see also Ishler v. United States, 115 Fed. Cl. 530, 534–35 (2014); Tieman v. United States, 113 Fed. Cl. 528, 531 (2013). "[S]ection 7422(a) creates a jurisdictional prerequisite to filing a refund suit." Gluck v. United States, 84 Fed.

---

[11] The statute at 26 U.S.C. § 7422 provides that:

**(a) No suit prior to filing claim for refund**

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a).

Cl. 609, 613 (2008) (citing <u>Chicago Milwaukee Corp. v. United States</u>, 40 F.3d at 374 (citing <u>Burlington N., Inc. v. United States</u>, 231 Ct. Cl. 222, 684 F.2d 866, 868 (1982))).

In order for a tax refund case to be duly filed in a federal court pursuant to 26 U.S.C. § 7422(a), the filing must comply with the timing requirements set forth in 26 U.S.C. § 6511 (2012).  The applicable language of 26 U.S.C. § 6511 states, in relevant part:

**(a) Period of limitation on filing claim**

> Claim for credit or refund of an overpayment of any tax imposed by this title . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

26 U.S.C. § 6511(a); <u>see also</u> Treas. Reg. § 301.6511(a)-1(a) (2014) ("In the case of any tax . . . : If a return is filed, a claim for credit or refund of an overpayment must be filed by the taxpayer within 3 years from the time the return was filed or within 2 years from the time the tax was paid, whichever of such periods expires the later.").  A claim for refund also "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to appraise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402-3(a)(2) (2014).

As articulated by the United States Supreme Court in <u>Commissioner v. Lundy</u>, 516 U.S. 235 (1996), the requirement for taxpayers to comply with the refund claims is as follows:

> A taxpayer seeking a refund of overpaid taxes ordinarily must file a timely claim for a refund with the IRS under 26 U.S.C. § 6511. That section contains two separate provisions for determining the timeliness of a refund claim. It first establishes a filing deadline: The taxpayer must file a claim for a refund "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." 26 U.S.C. § 6511(b)(1) (incorporating by reference 26 U.S.C. § 6511(a)). It also defines two "look-back" periods: If the claim is filed "within 3 years from the time the return was filed," ibid., then the taxpayer is entitled to a refund of "the portion of the tax paid within the 3 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(A) (incorporating by reference 26 U.S.C. § 6511(a)). If the claim is not filed within that 3-year period, then the taxpayer is entitled to a refund of only that "portion of the tax paid during the 2 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(B) (incorporating by reference § 6511(a)).

<u>Comm'r v. Lundy</u>, 516 U.S. at 239–40 (footnote omitted); <u>see also United States v. Clintwood Elkhorn Mining Co.</u>, 553 U.S. at 8 (determining that the language of section 6511(a) clearly states that taxpayers "must comply with the Code's refund scheme before

13

bringing suit, including the requirement to file a timely administrative claim."); <u>Diamond v. United States</u>, 107 Fed. Cl. 702, 706 (2012) (quoting 26 U.S.C. § 6511(a) ("Moreover, as a legal matter, the pertinent deadline for submitting a claim for refund to the IRS is either '3 years from the time the return was filed or 2 years from the time the tax was paid, *whichever of such periods expires the later.*'" (emphasis in original)), <u>aff'd</u>, 530 F. App'x 942 (Fed. Cir.), <u>reh'g denied</u> (Fed. Cir. 2013), <u>cert. denied</u>, 134 S. Ct. 1344 (2014); <u>Haas v. United States</u>, 107 Fed. Cl. 1, 5 (2012).   The Supreme Court in <u>Lundy</u> also noted that a timely filing was a prerequisite for the Court of Federal Claims to have jurisdiction for a refund claim.  <u>See</u> <u>Comm'r v. Lundy</u>, 516 U.S. at 240 ("Unlike the provisions governing refund suits in United States District Court or the United States Court of Federal Claims, which make timely filing of a refund claim a jurisdictional prerequisite to bringing suit, <u>see</u> 26 U.S.C. § 7422(a) . . . ."); <u>see also</u> <u>Ferguson v. United States</u>, 118 Fed. Cl. 762, 763 (2014) (stating that a tax refund action cannot be brought until a claim for refund or credit is filed with the IRS and noting that the administrative refund claim must be filed within two years of the date the tax is paid or three years of the date the tax return is filed, whichever is later). The Supreme Court also has determined that the equitable tolling doctrine does not apply to the time limitations in 26 U.S.C. § 6511, noting that both 26 U.S.C. § 6511, and its predecessor tax refund provisions, "contained highly detailed language with clear time limits." <u>United States v. Brockamp</u>, 519 U.S. 347, 353 (1997). In sum, Congress has provided strict statutory guidelines laying out the statute of limitations requirements for the filing of a federal tax refund claim:

> Read together, the import of these sections is clear: unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been "erroneously," "illegally," or "wrongfully collected," §§ 1346(a)(1), 7422(a), may not be maintained in any court.

<u>United States v. Dalm</u>, 494 U.S. at 602. Unless proper claims for refund were timely filed by plaintiff or a proper exception to the requirement to file a proper refund claim was satisfied, this court does not possess jurisdiction to review plaintiff's claims. <u>See</u> 26 U.S.C. § 7422; <u>Waltner v. United States</u>, 679 F.3d 1329, 1332 (Fed. Cir.) ("Thus, whether sovereign immunity has been waived and the Court of Federal Claims has jurisdiction over these refund claims depends on whether the taxpayers' submissions to the IRS constitute a claim for refund."), <u>cert. denied</u>, 133 S. Ct. 319, <u>reh'g denied</u>, 133 S. Ct. 688 (2012).


**Plaintiff Did Not File a Proper Claim for Refund with the IRS**

Given the parties' statement after negotiations that they believe they can settle the portion of plaintiff's claims involving $22,844.56 of plaintiff's 2006 deficiency, at issue is the portion of defendant's motion to dismiss plaintiff's claims that relate to the 2005 tax deficiency and the remaining portion of the 2006 tax deficiency, which was paid by application of plaintiff's 2009 tax overpayment on March 22, 2010. Defendant argues that plaintiff did not file a claim for refund in the three years after he filed his original tax return

for 2005 or 2006, or within the two years after the IRS applied a $20,723.00 overpayment on March 22, 2010. Defendant, therefore, argues that plaintiff's claims relating to 2005 and the portion of the 2006 tax liability satisfied on March 22, 2010 by application of plaintiff's 2009 tax year overpayment, which are not subject to settlement, should be dismissed.[12]

Defendant's motion to dismiss argues that this court should dismiss plaintiff's claims currently under review, because, pursuant to RCFC 12(b)(1), this court lacks subject matter jurisdiction. Defendant contends that plaintiff did not file a proper administrative claim for refund pursuant to 26 U.S.C. § 7422(a), and the government has not waived its sovereign immunity. Defendant claims that the Form 1040X Amended U.S. Individual Income Tax Returns, upon which plaintiff relies, were requests for abatement, rather than claims for refund, noting that plaintiff filed the Forms 1040X prior to satisfying his tax deficiency either by making additional payments to the IRS or by the IRS applying subsequent overpayments to the tax plaintiff owed for 2005 and 2006. Defendant also points out that the Forms 1040X stated they were being submitted for "audit reconsideration," rather than as refund claims, and that plaintiff's accountant, Mr. Brohl, had previously sent a letter to the IRS similarly explaining plaintiff's request for "audit reconsideration."

Treasury Regulation section 301.6402-3(a)(2) (2014) identifies the proper form to be filed by a claimant for a refund claim. It states, "[i]n the case of an overpayment of income taxes for a taxable year of an individual for which a Form 1040 or 1040A has been filed, a claim for refund shall be made on Form 1040X." Treas. Reg. § 301.6402-3(a)(2). In this case, plaintiff filed the correct form, a Form 1040X Amended U.S. Individual Tax Return, for each of the 2005 and 2006 tax years, however, the forms contained the following legend added by plaintiff in the "Explanation of Changes" section: "AUDIT RECONSIDERATION REQUESTED PRESENTING ADDITIONAL SUPPORT DOCUMENTATION, SEE LETTERS AND EXHIBITS SENT WITH THIS RETURN." (capitalization in original). Moreover, the Forms 1040X were filed prior to the date on which plaintiff's relevant 2005 and 2006 tax deficiency was satisfied. Nonetheless, despite the fact that plaintiff had not paid the tax that the IRS had determined he owed, plaintiff argues in this court that the Forms 1040X constituted refund claims.

In its motion to dismiss, defendant indicates that plaintiff filed the Forms 1040X for 2005 and 2006 on September 23, 2009. However, defendant alleges that because plaintiff had not at that time yet paid the taxes owed, either by making a payment to the IRS or by virtue of the IRS applying a subsequent overpayment to the tax assessed for 2005 and

---

[12] Although earlier defendant had argued in its motion to dismiss that the entire case should be dismissed, given the parties' statement that they believe they can resolve the $22,844.56 portion of plaintiff's 2006 deficiency, the court is considering defendant's motion with respect to only the remaining portion of plaintiff's claims for 2006 and all of plaintiff's claims for 2005.

2006,[13] the claims must be viewed as claims for abatement rather than claims for refund. Defendant explains that, "[a] fundamental difference exists between an abatement and a refund . . . ." (quoting Nasharr v. United States, 105 Fed. Cl. 114, 120 (2012) (citing Ertle v. United States, 118 Ct. Cl. 57, 93 F. Supp. 619 (1950))). Defendant states, "while a Form 1040X seeking refund of taxes already paid could be considered a proper claim for refund, a Form 1040X filed before payment is a claim for abatement over which this Court has no subject-matter jurisdiction." Defendant argues that plaintiff also did not intend the Forms 1040X to constitute refund claims because plaintiff labelled each of the forms as a Request for Audit Reconsideration, rather than a Request for Refund. Although a label added by plaintiff to his Forms 1040X is not necessarily conclusive, because the tax had not been paid, either by virtue of a payment sent to the IRS by plaintiff or because the IRS applied a subsequent overpayment, prior to the date plaintiff filed the Forms 1040X, there was no tax for plaintiff to claim he was entitled to have refunded. The statute, 26 U.S.C. § 7422(a), explicitly refers to a "[c]laim for credit or refund of an overpayment." Plaintiff's Forms 1040X were received by the IRS on September 23, 2009. It was not until March 22, 2010 that a subsequent overpayment was applied to pay a portion of plaintiff's outstanding tax deficiency. Plaintiff's Forms 1040X, therefore, could not have been claims for refund on the date they were filed, because there was no amount to be refunded.[14] Defendant quotes Ertle v. United States, 118 Ct. Cl. at 59, in its motion to dismiss, which states that the court:

> cannot construe the protest and claim for abatement made prior to the payment of the tax as being a compliance with the plain wording of the statute which requires the filing of a claim for a refund within a stated period after payment as being sufficient to confer jurisdiction upon this Court which it does not otherwise possess.

---

[13] It was not until March 22, 2010 that the IRS informed plaintiff that $15,740.61 of the $20,723.00 overpayment from his 2009 tax year had been applied to his 2005 tax deficiency and $4,982.39 of his 2009 overpayment had been applied to his 2006 tax deficiency, thereby fully resolving his 2005 tax deficiency and partially resolving his 2006 tax deficiency.

[14] 26 U.S.C. § 6511 limits a taxpayer's recovery from a claim for refund to the amount paid during the two years immediately preceding the claim for refund, if the claim for refund was not filed within three years after the date the tax return was filed. 26 U.S.C. § 6511(a). Plaintiff originally filed his 2005 tax return on April 27, 2006. As of September 23, 2009, plaintiff had not paid any of the 2005 deficiency. Therefore, even if plaintiff's September 23, 2009 Form 1040X for 2005 had constituted a refund claim, it would not have been filed within three years of the return being filed or within two years of the tax being paid, and would be considered outside the statute of limitations' allowable time period. With respect to 2006, plaintiff's September 23, 2009 Form 1040X was filed within three years of May 3, 2007, the date he filed his tax return. Therefore, plaintiff's 2006 claim was only restricted by his failure to file a proper refund claim, not also by the statute of limitations for recovery.

**The IRS Did Not Waive the Requirement that Plaintiff File a Refund Claim**

Plaintiff contends in his response brief that that even if the "audit reconsideration" legend suggests that plaintiff's submissions to the IRS were not claims for refund at the time they were filed, an exception to the requirement for filing claims for refund was met. Plaintiff tries to explain that, "[t]here are four exceptions recognized by the Supreme Court that circumvent the necessity of formally complying with the regulations regarding the filing of a proper claim for refund."

Given that plaintiff did not file valid claims for refund, the remaining issue is whether one of the four exceptions to the requirement that a valid claim for refund be filed prior to bringing suit in this court applies to the above captioned case. The first exception the United States Court of Appeals for the Federal Circuit has recognized is the informal claim doctrine. Informal claims are sufficient if they are filed within the prescribed statute of limitations and later perfected by formal claims. See Computervision Corp. v. United States, 445 F.3d 1355, 1364 (Fed. Cir. 2006) ("Under the informal claim doctrine, a timely claim with purely formal defects is permissible if it fairly apprises the IRS of the basis for the claim within the limitations period."), reh'g and reh'g en banc denied (Fed. Cir.), cert. denied, 549 U.S. 1338 (2007). To qualify as an informal claim, the claim must (1) be submitted within the limitations period, (2) have a written component, and (3) adequately give the IRS notice that the plaintiff is seeking a refund for certain years. Id. (citing United States v. Kales, 314 U.S. 186 (1941); Arch Eng. Co., Inc. v. United States, 783 F.2d 190, 192 (Fed. Cir. 1986)). "'The determination of whether a taxpayer has satisfied the requirements for an informal claim is made on a case-by-case basis and is based on the totality of the facts.'" Pennoni v. United States, 86 Fed. Cl. 351, 362 (2009) (quoting Donahue v. United States, 33 Fed. Cl. 600, 608 (1995)). A second exception to the formal claim requirement is the general claim doctrine, which applies when "(1) the taxpayer has filed a formal general claim within the limitations period; and (2) an amendment is filed outside the limitations period that makes the general claim more specific." Computervision Corp. v. United States, 445 F.3d at 1368. Related to the general claim doctrine is the third exception, the germaneness doctrine, which is applicable in cases when the taxpayer:

> (1) files a formal claim within the limitations period making a specific claim; and (2) after the limitations period but, while the IRS still has jurisdiction over the claim, files a formal amendment raising a new legal theory, not specifically raised in the original claim, that is 'germane' to the original claim, that is, it depends upon facts that the IRS examined or should have examined within the statutory period while determining the merits of the original claim.

Id. at 1370. Plaintiff does not allege, and the court does not find, that any of these three exceptions apply to the above captioned case.[15]

A fourth exception to the requirement to file a formal claim is the waiver doctrine. Under the waiver doctrine, if the IRS adjudicates an informal claim as though it were a formal claim, the requirement of formality may be considered waived. See Blue v. United States, 108 Fed. Cl. 61, 69 (2012). The waiver doctrine applies when (1) there is clear evidence that the commissioner understood the claim that was made, even though there was a departure in form in the submission and (2) it is unmistakable that the commissioner dispensed with the formal requirements and examined the claim. See Angelus Milling Co. v. Comm'r, 325 U.S. 293, 297–98, reh'g denied, 325 U.S. 895 (1945). The central purpose of this doctrine is "'to prevent IRS agents from lulling taxpayers into missing the limitations deadline.'" Blue v. United States, 108 Fed. Cl. at 69 (quoting Computervision Corp. v. United States, 445 F.3d at 1366 ("The central purpose of the waiver doctrine is 'to prevent IRS agents from lulling taxpayers into missing the [limitations] deadline . . . .'" (quoting BCS Fin. Corp v. United States, 118 F.3d 522, 526 (7th Cir. 1997)) (alteration and omission in Computervision))). In plaintiff's case, the IRS repeatedly reminded plaintiff of the deadlines for filing in the United States Tax Court, which is the only court which has jurisdiction prior to taxes being paid.[16]

---

[15] Defendant preemptively raises the informal claim exception in its motion to dismiss and argues that it does not apply in the above captioned case because a formal claim was never filed to perfect plaintiff's claim. Plaintiff does not argue the informal doctrine applies.

[16] 26 U.S.C. § 6213 (2012) provides the timeframe in which it is proper to file suit in Tax Court, as follows:

**(a) Time for filing petition and restriction on assessment**

Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. . . . The Tax Court shall have no jurisdiction to enjoin any action or proceeding or order any refund under this subsection unless a timely petition for a redetermination of the deficiency has been filed and then only in respect of the deficiency that is the subject of such petition.

26 U.S.C. § 6213(a). With respect to cases filed in the United States Court of Federal Claims and United States district courts, 28 U.S.C. § 1346 requires the tax to be paid prior to a taxpayer filing suit, as follows:

**(a)** The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

Plaintiff contends that the IRS waived any potential defect in the form of his refund claim by adjudicating his claim on its merits and treating it as a proper claim for refund. Plaintiff states the IRS Letter 906 the IRS sent to plaintiff on February 17, 2011 regarding his 2005 tax year deficiency is the letter the IRS uses to reject taxpayers' claims for refunds. Plaintiff asserts that this letter included language which offered him the right to file suit in the Court of Federal Claims for his 2005 tax year claim.[17] Plaintiff also argues that a notation in the examining officer's notes indicates she treated plaintiff's claim for 2005 as one for refund. The Examining Officer's Activity Record for February 20, 2011 states that:

> The TP filed 1040X returns for 2005 & 2006. TP claims he met the physical presence criteria or the Bona Fide Residence criteria for making his home in Nigeria or Costa Rica. Prepared L906 for 2005 because 2005 was full paid. Prepared L693 for 2006—not full paid. mailed [sic] no-change report for both 2005 & 2006 w/ copy to POA. closed no-change

(capitalization and punctuation in original). The examining officer specifically noted that plaintiff's tax obligation for 2006 was "not full paid."

Defendant contends that there is insufficient evidence that the IRS treated plaintiff's Forms 1040X as claims for refund, as opposed to claims for adjustment to his tax liability. Defendant argues that the letters from the IRS to plaintiff characterized plaintiff's claims as claims for adjustment of the tax liability and the certified IRS transcript bears no notation that claims for refund were filed or denied. The critical question is how the IRS actually treated plaintiff's claims, and, whether the standard for waiver was met. To prove a waiver occurred, plaintiff would have to demonstrate that actions taken by IRS representatives indicate that the IRS understood plaintiff's claims to be claims for refund and unmistakably dispensed with the formal requirements and examined the claims. See Angelus Milling Co. v. Comm'r, 325 U.S. at 297–98.

As stated in Angelus Milling Co. v. Comm'r:

---

> **(1)** Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws. . . .

28 U.S.C. § 1346(a)(1).

[17] Plaintiff also alleges that the same IRS Letter 906 he received for the 2005 tax year was subsequently sent to him for the 2006 tax year by facsimile from the IRS and was dated July 26, 2013.

> If the Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction, and not a practical safeguard, of a regulation to allow the Commissioner to invoke technical objections after he has investigated the merits of a claim and taken action upon it. Even tax administration does not as a matter of principle preclude considerations of fairness.

Id. at 293. The Angelus Milling court explained the standard for finding waiver and then determined that the plaintiff had not proven that the IRS Commissioner had unmistakably dispensed with the formal requirements and examined the merits of the claim. Angelus Milling Co. v. Comm'r, 325 U.S. at 297. In plaintiff's case, the IRS also did not dispense with the formal claims process or waive the defects in plaintiff's claims. In fact, the IRS repeatedly treated plaintiff's claims as claims for adjustment in accordance with plaintiff's requests at the time.

Plaintiff tries to confer meaning on the IRS' use of IRS Letter 906. The Internal Revenue Manual states that IRS Letter 906 is used to deny claims for refund, however, in plaintiff's case, the examining officer included language that stated the IRS was denying plaintiff's claim for an "adjustment" to his tax liability, not that it was denying a claim for refund. Moreover, a letter cannot confer jurisdiction by virtue of informing a taxpayer of his right to sue if such right does not otherwise exist. See, e.g., Diamond v. United States, 115 Fed. Cl. 516, 526 (2014), aff'd, 2015 WL 527500 (Fed. Cir. Feb. 10, 2015), cert. denied, 2015 WL 1331711 (U.S. Apr. 27, 2015); Cheesecake Factory Inc. v. United States, 111 Fed. Cl. 686, 695 (2013); Colman v. United States, 96 Fed. Cl. 633, 639 (2011) ("'[N]o action of the parties can confer subject-matter jurisdiction upon a federal court.'" (quoting Ins. Corp. of Ir. V. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) (alteration in Colman))). Plaintiff's argument that the examining officer's notes prove she treated plaintiff's 2005 claim as one for refund also overstates the conclusions which should be drawn from the IRS' actions. Although the examining officer noted that the tax for 2005 was "full paid" at the time she prepared the claim denial letters to send to plaintiff, she did not suggest that the tax was paid at the time the claim was filed. She also did not indicate that she considered the claim to be for the refund of tax, as opposed to the adjustment of tax liability. Without more, waiver by the IRS is not demonstrated. Additionally, an IRS document describing IRS interaction with the taxpayer contains a narrative referring to plaintiff's issue as "AUDIT RECONSIDERATION," further undermining plaintiff's claim that the IRS treated the claim as one for refund. (capitalization in original). In Mr. Martti's case, the departure from the required procedure for filing a refund claim is not one of no consequence. Although plaintiff filed the proper form, he added words on the form to indicate his intent to request "audit reconsideration." Moreover, even if he conceivably could have thought he was filing claims for refund, his claims would have been defective because no tax had been paid at the time plaintiff filed the Forms 1040X. Therefore, at that time, there was nothing for the IRS to refund. Although the tax was paid before the IRS made a decision regarding plaintiff's adjustment, at the time the forms were filed, they could not have constituted claims for refund, and no retroactive conversion can occur.

Plaintiff argues that his case is substantially similar to <u>Blue v. United States</u>, 108 Fed. Cl. 61. Plaintiff argues that this court should find, as the court did in <u>Blue</u>, that the IRS waived formal defects in the claim by adjudicating the claim on its merits. <u>See</u> <u>id.</u> at 69. In <u>Blue</u>, the plaintiff sent a letter to the IRS explaining his position regarding an alleged deficiency and filed a request for appeals review. <u>Id.</u> at 64. The plaintiff subsequently paid the assessed taxes. <u>Id.</u> He never filed a formal refund claim on a Form 1040X. <u>Id.</u> at 68. Nevertheless, the IRS sent the plaintiff a letter stating that his "'claim for refund in the amount of $2,847.00' was disallowed." <u>Id.</u> at 64. The court in <u>Blue</u> found that although the plaintiff had not filed a proper refund claim, the language and content of the disallowance letter indicated that the IRS had administratively processed the taxpayer's request for appeal as a claim for refund and considered the claim on its merits. <u>Id.</u> at 68–69. The letter also advised the plaintiff of his right to file suit in the United States Court of Federal Claims as the next step for recourse. <u>Id.</u> at 69. Plaintiff argues that it is insignificant that the letter the taxpayer received from the IRS denying the claim in <u>Blue</u> referred to the claim as a claim for refund, while the letter Mr. Martti received from the IRS in the above captioned case refers to an adjustment to tax. This court disagrees. Typically, a taxpayer will seek audit reconsideration by the IRS prior to paying an assessed tax amount, whereas a taxpayer must pay an assessed tax before it files a claim for refund. Given that audit reconsideration occurs pre-payment, while refund claims are filed post-payment, it would be inappropriate to find no distinction between the language used by the IRS in <u>Blue</u> and the language used in Mr. Martti's case. Although the letter sent to Mr. Martti was similar to the letter sent to the plaintiff in <u>Blue</u> insofar as both letters had language informing the taxpayer of their right to bring suit in the United States Court of Federal Claims, the words of a letter cannot change the facts of what occurred in plaintiff's case or confer jurisdiction in this court when jurisdiction does not otherwise exist. Of greater significance than the similar language about the right to bring suit in the United States Court of Federal Claims is the disparate language referring to the taxpayers' claims, as a claim for refund in <u>Blue</u>, but as a "claim for an adjustment to your tax" in Mr. Martti's case. "Claim for refund" and "adjustment to your tax" are not synonymous terms. Plaintiff Martti has failed to demonstrate that the IRS acted in a way that waived the requirement for plaintiff to file formal refund claims.

## CONCLUSION

Subsequent to filing the motion to dismiss, as noted above, the parties indicated in a joint status report that they believe they can settle the portion of the case involving plaintiff's claims for refund totaling $22,844.56 for the 2006 tax year, which includes the amounts applied to plaintiff's 2006 tax deficiency on April 15, 2011 and June 24, 2011. Therefore, the court does not decide defendant's motion to dismiss with respect to the portion of plaintiff's 2006 tax year claim that the parties represented they believe they will be able to settle. With respect to the $20,723.00 applied by the IRS on March 22, 2010 to satisfy plaintiff's 2005 tax deficiency and the remaining portion of his 2006 tax deficiency, plaintiff did not file proper refund claims with the IRS prior to bringing suit in this court. Defendant's motion to dismiss is, therefore, **GRANTED IN PART**.  Plaintiff's claims regarding the $20,723.00 paid on March 22, 2010 to resolve his 2005 tax year

deficiency and a portion of his 2006 tax year deficiency are **DISMISSED** with prejudice. The $22,844.56 portion of plaintiff's claims for the 2006 tax year remains before the court. The parties shall file a joint status report on or before **Tuesday, May 26, 2015** describing their progress in finalizing a settlement regarding the remaining portion of the case that is not dismissed pursuant to this opinion.


    **IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**
